## APPEAL OF JOHN W. BAILEY.

Docket No. 3901.     Submitted November 2, 1925.     Decided January 16, 1926.

> Upon the evidence submitted, *held*, that the taxpayer did not realize a profit in the years 1919 and 1920 upon the sale of certain stock of which he had made an absolute gift prior to the date of the sale, and that his returns for the years 1919 and 1920 were not willfully false and fraudulent with intent to evade the tax by reason of his failure to report as income to him the difference between the cost of the stock to him and the price at which it was sold by the donees.

*W. D. Jamison* and *Paul E. Shorb, Esqs.*, for the taxpayer.
*Bruce A. Lowe* and *C. H. Curl, Esqs.*, for the Commissioner.

Before JAMES, LITTLETON, SMITH, and TRUSSELL.

This is an appeal from the determination of deficiencies in income tax for the calendar years 1919, 1920, and 1921, in the amounts of $17,663.02, $5,596.10, and $314.84, respectively, and 50 per cent *ad valorem* fraud penalty for the calendar years 1919 and 1920, in the amounts of $8,831.51 and $3,212.14, respectively. Only the deficiencies including penalties for the years 1919 and 1920 are in controversy. The questions presented are: (1) Whether an alleged profit arising from the sale of certain stock constituted income to the taxpayer or to six other individuals to whom he claims to have made gifts of stock prior to the sale thereof; and (2) whether the taxpayer willfully filed false and fraudulent returns with intent to evade the tax for each of the years 1919 and 1920 in failing to include therein as income to him the alleged profit resulting from the sale of the stock.

### FINDINGS OF FACT.

Taxpayer is a resident and citizen of Battle Creek, Mich., where he has been engaged for many years in the practice of law. Prior to July 17, 1919, he was the owner of 160 shares of common capital stock of the Consolidated Press Co. at Hastings of the par value of $100 per share. For many years he had rendered financial assistance to his five sisters, three of whom had always lived at his home. For some weeks prior to July 17, 1919, taxpayer talked with his wife

and five sisters and made known to them the fact that he was making them a gift of certain shares of the stock owned by him in the Consolidated Press Co. On July 17, 1919, he transferred and conveyed by gift and delivery to his wife, five sisters and his private secretary shares of stock of the Consolidated Press Co., as follows:

|  | Shares. | Par value. |
|---|---|---|
| Lillian C. Bailey, his wife | 70 | $7,000 |
| Julia Bailey, sister | 25 | 2,500 |
| Catharine Bailey, sister | 4 | 400 |
| Helen B. Murphy, sister | 4 | 400 |
| Mary McLee, sister | 1 | 100 |
| Anne Bailey, sister | 1 | 100 |
| Altine McKee, private secretary | 1/5 | 20 |

At the time of delivery of the said shares of stock, taxpayer executed to each of the donees a bill of sale of equal import, except as to name and number of shares transferred, the bill of sale executed to his wife, Lillian C. Bailey, being in words and figures as follows:

KNOW ALL MEN BY THESE PRESENTS, that I, JOHN W. BAILEY of the City of Battle Creek in the County of Calhoun and State of Michigan, party of the first part, for and in consideration of the sum of One Dollar ($1.00), lawful money of the United States, to me paid by LILLIAN C. BAILEY, of the same place, party of the second part, the receipt whereof is hereby acknowledged, have bargained and sold, and by these presents do sell, grant and convey unto the said party of the second part, her heirs, executors, administrators or assigns, the following,—

70 Shares of the face value of $100.00 each, of the capital stock of Consolidated Press Company;

To HAVE AND TO HOLD the same unto the said party of the second part, her heirs, executors, administrators and assigns, FOREVER.

And the said party of the first part for himself, his heirs, executors and administrators, does covenant and agree to and with the said party of the second part, her heirs, executors, administrators and assigns, to WARRANT AND DEFEND the sale of said stock hereby made, unto the said party of the second part, her heirs, executors, administrators and assigns against all and every person or persons whatsoever.

Neither at the time nor prior to the date of the gifts of stock had there ever been made to the taxpayer or the stockholders of the Consolidated Press Co. a definite offer to purchase the stock of that company, nor had the taxpayer or the other stockholders of the Consolidated Press Co. made any offer to sell their stock in that company. On July 17, 1919, taxpayer was advised by H. B. Sherman, the principal officer and owner of 70 per cent of the entire capital stock of the Consolidated Press Co., who resided at Hastings, Mich., that the E. W. Bliss Co., of Brooklyn, N. Y., had informed him that they were desirous of having a conference in New York for the purpose of discussing the matter of a possible purchase by them of the plant of the Consolidated Press Co., and requested taxpayer

to go to New York with him. Taxpayer accompanied Sherman to New York about July 20, where, after a conference lasting until July 22, an agreement was signed by H. B. Sherman, who held power of attorney to act for other stockholders, and the E. W. Bliss Co., the agreement providing as follows:

*Mr. Sherman agrees:*

### I.

That, on the 28th day of July, 1919, he will sell and deliver to the Company One thousand nine hundred and sixty (1;960) shares of the Capital stock of Consolidated Press Company, a Corporation created and existing under the laws of the State of Michigan, of the par value of One hundred and ninety six thousand dollars ($196,000.00) all in negotiable form duly indorsed in blank and properly stamped for transfer.

### II.

That, on said 28th day of July, 1919, Mr. Sherman will deposit with the Equitable Trust Co. of the City of New York, Two thousand and forty (2,040) shares of said Consolidated Press Co., of the par value of Two hundred and four thousand dollars ($204,000.00), all in negotiable form, duly indorsed in blank and properly stamped for transfer, and will also execute and deliver to said Trust Company, the document hereto attached marked "A."

### III.

The 1,960 shares referred to in paragraph I above and the 2,040 shares referred to in paragraph II above together, constitute all the shares of stock of said Consolidated Press Company.

The Company agrees in consideration of Mr. Sherman selling and delivering the stock referred to in paragraph I above and depositing the stock referred to in paragraph II above and of the guarantees and agreements of Mr. Sherman hereinafter set forth.

### IIII.

That, it will simultaneously with the delivery to it of the shares described and specified in paragraph I, and the delivery to the Equitable Trust Company of the shares and agreement marked "A," referred to in paragraph II, pay to Mr. Sherman the sum of Nine hundred and eighty thousand dollars ($980,000.00) in payment for the shares referred to in paragraph I.

As a part of the consideration for the payment to be made to him by the Company as provided in paragraph IIII, Mr. Sherman agrees and guarantees to the Company

### (a)

That, the Consolidated Press Company is a Corporation duly organized and existing under the laws of the State of Michigan with a Capital stock of Four hundred Thousand Dollars ($400,000.00) divided into 4,000 shares of the par value of $100.00 each, all of which stock has been duly issued, full paid and nonassessable.

(b)

That the amounts and notes receivable and cash on hand and in bank as set forth on the attached sheet, marked exhibit " B " and made a part hereof, are correct as of June 30, 1919. That the inventory of the raw material, work in process, and finished product was equal to the amount set forth in Exhibit " B." That on said Exhibit " B " the charged off portions have been brought back and the amount set up on the books for taxes and bad accounts have been omitted.

(c)

That since June 30, 1919, the transactions and business done by said Consolidated Press Co. are those and only those of a going concern.

(d)

That there are no existing contracts with any of the directors or officers of said Consolidated Press Company except with L. W. Heath for services and with H. B. Sherman, L. W. Heath and Joseph McKnight for a commission, all of which contracts will be terminated as of June 30, 1919, and commissions earned prior to that only paid.

(e)

That all of the officers and directors of the Consolidated Press Company will, when requested by the Company, resign and elect as their successors such persons as the Company may designate.

*The Company Agrees:*

Unless and until it shall exercise the option given it herein that it will not do, nor allow to be done any of the following things:

(a) Place any mortgage or other lien upon any of the property owned by the Consolidated Press Company, a corporation.

(b) That it will not permit the Consolidated Press Company, a Corporation, to declare or pay any dividends.

(c) That it will not sell, assign, transfer, lease or otherwise dispose of the plant of the Consolidated Press Co., a Corporation, or of this agreement.

(d) That it will not increase the capital stock of the Consolidated Press Company.

(e) That it shall not permit the Consolidated Press Company to increase the salary or commission given to its officers or directors.

(f) That it will not increase by contract or otherwise the debts or obligations of the Consolidated Press Co. for the purpose of increasing the present plant or for purchasing machinery.

(g) That it will not amend or change the by-laws of the Consolidated Press Company.

It is mutually understood and agreed that there are existing Federal and City taxes either matured, or to mature, which the Consolidated Press Company shall pay as and when they mature and become payable.

This agreement is binding on the Executors, Administrators, and Successors of the parties hereof.

Attached to this contract was a document addressed to the Equitable Trust Co. of New York, signed by H. B. Sherman, in which

he agreed to deposit 2,040 shares, or 51 per cent, of stock of the Consolidated Press Co., as follows:

To THE EQUITABLE TRUST COMPANY OF NEW YORK:

I hand you herewith 2,040 shares of the Capital Stock of the Consolidated Press Company, of the aggregate par value of $204,000.00, all of which shares are in negotiable form endorsed in blank and duly stamped for transfer. You will hold the same, and if at any time after the 2nd day of January, 1920, and before the 10th day of January, 1920, E. W. Bliss Company shall deliver to you a duly certified check to my order or to my account for $998,414.37 you will deliver said 2,040 shares to it, and receive and forward the amount so delivered to me.

Until said 10th day of January, 1920, you are to hold the same in your possession so that if E. W. Bliss Company make such payment you will be in a position to deliver to it the stock as above-provided.

If the payment shall not be made by said E. W. Bliss Company on or before said 10th day of January, 1920, then all the stock herewith deposited shall at once be returned to me.

This deposit and option is made pursuant to. an agreement entered into between the undersigned and said E. W. Bliss Company, dated July 22nd, 1919, a copy of which is hereto attached.

The terms of the above agreement were carried out and on July 28, 1919, E. W. Bliss Co. paid H. B. Sherman, as trustee for the stockholders of the Consolidated Press Co., $980,000 for 1,960 shares, or 49 per cent of the stock of the Consolidated Press Co., and on January 10, 1920, the sum of ·$1,020,000 for the remaining 2,040 shares, or 51 per cent. The money received by Sherman from E. W. Bliss Co. on July 28, 1919, and January 10, 1920, was paid over by him on July 31, 1919, and January 24, 1920, respectively, to the various stockholders of the Consolidated Press Co., proportionately of the sums received on the basis of $500 per share. The owners of the stock transferred by the taxpayer by gift on July 17, 1919, were paid their proportion of amounts received from E. W. Bliss Co. On August 1, 1919, Lillian C. Bailey, wife of the taxpayer, loaned $16,500 of the $17,150 received by her on July 31, 1919, to her husband, taking his note due in five years from that date, bearing interest at 4 per cent payable annually, which interest has been paid. Upon the receipt by Lillian C. Bailey of the second installment, $17,420, on January 24, 1920, she loaned $16,500 thereof to her husband, taking his note dated January 26, 1920, due on August 1, 1924, bearing interest at 4 per cent payable annually, which interest was also paid. The money borrowed by the taxpayer from his wife was immediately invested by him in real estate and securities. The amounts due other individuals to whom the taxpayer had made gifts of stock were paid direct to them by Sherman, and taxpayer has at no time had any interest therein, directly or indirectly.

The Commissioner held that the gifts by taxpayer were not *bona fide;* that the taxpayer realized a taxable profit in 1919 and 1920 upon

the difference between the cost to him of the 160 shares and the sales price, and that his income-tax returns for 1919 and 1920 were willfully false and fraudulent with intent to evade the tax by reason of his failure to report as his income the claimed profit upon the stock.

## DECISION.

The deficiencies determined by the Commissioner are disallowed.

## OPINION.

LITTLETON : The foregoing findings of fact dispose of the questions involved in this appeal. The evidence presented shows that prior to the date of any offer to purchase the stock in the Consolidated Press Co., before any offer had been made by the taxpayer to sell his stock and prior to any offer to purchase the stock, he made absolute and valid gifts of certain of the 160 shares of stock owned by him in the Consolidated Press Co.; that it was not until five days after the gift that an offer was made to purchase the stock. The evidence further shows that some weeks prior to the date of the actual delivery of the stock taxpayer informed the donees of his intention to make the gift.

The Commissioner contends that the taxpayer knew that the stock was to be sold; that the negotiations had reached the point where the gift by the taxpayer constituted a gift of the proceeds from the sale of the stock; that the gifts were not *bona fide* and were made with intent to defraud the Government of the tax upon the sale, and that the returns of the taxpayer for 1919 and 1920, which did not include the profit upon the sale of the stock, were willfully false and fraudulent with intent to evade the tax. There is no evidence to support this contention. Even if we should find as a fact that the taxpayer had reason to believe that E. W. Bliss Co. or someone else would probably make an offer to purchase the stock, this would not, in view of the other evidence before the Board, have any effect upon these particular gifts. The gifts here involved were of the stock and not of the proceeds therefrom, and no part of the amounts received by the donees constituted income to this taxpayer. It therefore follows that the determination of the Commissioner that the taxpayer realized a profit upon the sale of 160 shares of stock of the Consolidated Press Co., and that the returns, which did not include this profit, were willfully false and fraudulent with intent to evade the tax, was erroneous.

JAMES dissents.

On reference to the Board, MARQUETTE and TRAMMELL dissent.